IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**JESSIE J. WATSON**                                                                                    **PLAINTIFF**

**V.**                               **NO. 3:25-cv-00023-ERE**

**FRANK BISIGNANO, Commissioner**
**of the Social Security Administration**                                           **DEFENDANT**

**ORDER[1]**

## I.   Introduction:

On July 9, 2021, Jessie J. Watson filed a Title II application for disability and disability insurance benefits and a Title XVI application for supplemental security income benefits, alleging disability beginning on August 7, 2018. *Tr. 14*. The applications were denied at the initial and reconsideration levels of review. *Id*. On January 19, 2024, an administrative law judge ("ALJ") found that Mr. Watson was not disabled. *Tr. 14-28*. The Appeals Council declined to review the decision, making the ALJ's decision the final decision of the Commissioner. *Tr. 1-7*. Mr. Watson now seeks judicial review.

For the reasons stated below, I affirm the decision of the Commissioner.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. *Doc. 5*.

## II. **The Commissioner's Decision:**

At step one of the required five-step analysis, the ALJ found that Mr. Watson had not engaged in substantial gainful activity since August 7, 2018, the alleged onset date.[2] *Tr. 16*. At step two, the ALJ determined that Mr. Watson has the following severe impairments: post-traumatic stress disorder ("PTSD"), depressive disorder, generalized anxiety disorder ("GAD"), intermittent explosive disorder, lumbar and cervical degenerative disc disease ("DDD"), and a 1998 right ankle fracture with residuals. *Tr. 17*.

The ALJ found that Mr. Watson did not have an impairment or combination of impairments meeting or medically equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 19-20*. Next, the ALJ determined that Mr. Watson has the residual functional capacity ("RFC") to perform light work with the following limitations: (1) no climbing of ladders, ropes, or scaffolds; (2) only occasional climbing of ramps or stairs; (3) no more than occasional stooping, crouching, kneeling, and crawling; (4) no concentrated exposure to excessive vibration, unprotected heights, and hazardous machinery; (5) can use judgment to

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

make simple work-related decisions; (6) can sustain concentration, persistence, and pace for simple tasks; (7) can understand, carry out, and remember simple work instructions and procedures; (8) can adapt to changes in the work setting that are simple, predictable, and can be easily explained; and (9) occasional interaction with coworkers, supervisors, and the public. (Tr. 20-21).

At step four, the ALJ found that Mr. Watson is unable to perform any past relevant work. *Tr. 26-28*. Relying on the testimony from a Vocational Expert ("VE"), and considering Mr. Watson's age, education, work experience, and RFC, the ALJ found that significant numbers of jobs existed in the national economy that he could perform, such as marker and assembler. *Id*. Therefore, the ALJ found that Mr. Watson was not disabled. *Id*.

### III. Discussion:

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we

also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. Mr. Watson's Arguments for Reversal

Mr. Watson contends that evidence supporting the ALJ's decision is less than substantial. Mr. Watson argues that the ALJ failed to: (1) give proper consideration to his subjective complaints; (2) consider all impairments in combination: (3) properly develop the record; and (4) identify jobs that he could actually perform.

As for physical impairments, Mr. Watson suffered from general pain due to DDD and an ankle fracture, as well as migraines. However, medical records show that Mr. Watson walked without assistance, had a normal gait, could rise from a seated position, and had full muscle strength and reflexes. *Tr. 605-606*. Mr. Watson

treated pain conservatively, and he admitted that headaches and neck pain improved with medication, and that a knee brace helped. *Tr. 620, 840.*

As for mental impairments, they seemed to pose more complex difficulties for Mr. Watson, at least based upon his subjective complaints. However, Mr. Watson generally presented to providers with alert and cooperative attitude, good insight and cognitive functioning, and logical and goal-directed thought processes. *Tr. 597-598, 605*. Moreover, Mr. Watson's daily activities undermined his claims. He asserted at the hearing that he could not perform many daily functions, but on his written function report, Mr. Watson said he could spend time with others, fish, shop in stores, manage money, do art, follow instructions, mow the yard, and maintain personal care.[3] *Tr. 362-369.*

1. **Subjective Complaints**

Mr. Watson first alleges that the ALJ did not properly consider his objective complaints.[4] The ALJ fully discussed the nature of Mr. Watson's pain (*i.e.*, pain

---

[3] Such daily activities undermine his claims of disability. *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015*); Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

[4] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. See *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

radiation into hips and pain exacerbated by walking). *Tr. 22*. The ALJ observed that clinical musculoskeletal exams were grossly normal.[5] *Id*. The ALJ also noted that chronic foot pain and neck pain were stable in October 2022, according to treatment notes. *Tr. 23, 751-770*.

In discussing Mr. Watson's daily activities, the ALJ found they were inconsistent with disabling conditions. *Tr. 21*. As noted above, Mr. Watson could perform a variety of daily functions. While he said his intermittent explosive disorder would not allow for work, he presented as cooperative and logical with normal mood at most counseling appointments. *Tr. 595-602, 689-697*. He was able to attend the hearing and testify without incident. *Tr. 52-70*. He understood the questions posed by the ALJ and gave clear answers. *Id*.

The ALJ discussed Mr. Watson's work history in the written decision, after asking him about it at the hearing. *Tr. 16*. Notably, Mr. Watson worked after the alleged onset date, which undermines a claim of disability. *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009) (holding that it is proper for the ALJ to consider employment after an alleged onset date of disability because working generally demonstrates an ability to perform substantial gainful activity).

---

[5] Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

Overall, there is support for the ALJ's finding that Mr. Watson's subjective complaints were not entirely consistent with the evidence in the record. *Tr. 22*.

### 2. Impairments in Combination

Mr. Watson asserts the ALJ did not consider all of his impairments in combination. At step two, the ALJ evaluated all alleged impairments,[6] both severe and non-severe impairments. *Tr. 17-18*. The ALJ then conducted a thorough discussion of Mr. Watson's symptoms and conservative treatment, as well as his positive response to treatment. At step four, the ALJ determined an RFC, which accurately reflected Mr. Watson's limitations based on his impairments in toto.

### 3. Duty to Develop Record

Mr. Watson contends the ALJ did not fully develop the record.[7] However, Mr. Watson's attorney stated at the hearing that he had no objections to the exhibits

---

[6] Once the ALJ proceeds past step two, the labeling of an impairment as severe or non-severe has no legal significance; the medical record as whole is the basis for the determinations at steps three and four. *See* 20 C.F.R. §§ 404.1545(e), 416.945(e); Social Security Ruling 96-8p, 1996 WL 374184 (the ALJ will consider all medically determinable impairments, even those that are non-severe, when assessing residual functional capacity).

Mr. Watson made a corollary argument that he met Listing 12.06 for mental impairments. However, he did not explain this argument with citation to the record or to medical conditions. Also, he did not show that he met the criteria of demonstrating at least two marked limitations in the following areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm#12_06. The ALJ fully explained why Mr. Watson did not meet this Listing. *Tr. 18-19*.

[7] An ALJ has a basic duty to develop a reasonably complete record. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011); *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a claimant has the burden of proving her disability; the ALJ does not have to play counsel for the claimant and the ALJ's duty to develop is not never-ending. *Id*.

and the record deemed complete. *Tr. 40-41*. Moreover, the ALJ discussed all of the medical records, the medical opinions, and the testimony of Mr. Watson and the VE. There was no glaring issue suggesting further development was warranted. Mr. Watson's unsupported claim that he suffers from schizophrenia does not mean that condition should have been further investigated.[8] *Tr. 524*. It is the claimant's burden to present evidence to support his claim. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (Claimant "has the burden to offer the evidence necessary to make a valid decision about [his] claim."). On this record, the evidence was sufficient to support the RFC for light work with some additional limitations.

### 4. Jobs Identified at Step Five

With no citation to the record, Mr. Watson alleges, rather generally, that the jobs identified at step five outstripped his mental and physical functional abilities. He does not provide any occupational data to contradict the VE's well-reasoned testimony. The ALJ properly posed hypotheticals to the VE at step five that encompassed all of Mr. Watson's credible limitations, as reflected in the RFC.[9] The RFC accounted for physical limitations, and it limited Mr. Watson to the simplest type of work from a mental standpoint. *Tr. 20-21*. Mr. Watson has not shown that

---

[8] A diagnosis alone does not infer disability; there must be a functional loss establishing the inability to engage in substantial gainful activity. See *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

[9] A hypothetical question need only include those impairment and limitations found credible by the ALJ. *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005).

he could not perform the representative occupations suggested by the VE. This argument fails.

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ did not err in his analysis of subjective complaints or evaluation of Mr. Watson's impairments in combination. The record was fully developed and the ALJ did not err at step five. The finding that Mr. Watson was not disabled within the meaning of the Social Security Act is AFFIRMED. Judgment will be entered for the Commissioner.

SO ORDERED 22 July, 2025.

_____
UNITED STATES MAGISTRATE JUDGE